Filed 6/19/15  Wells Fargo Bank v. Drumgo CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| WELLS FARGO BANK, N.A., | B255831 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BP112376) |
| v. | |
| WILLIE MAE DRUMGO, Individually and as Successor Trustee, etc. | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Michael Levanas, Judge.  Reversed.

Law Office of Claud A. Sinclair and Claud A. Sinclair and the Defendant and Appellant.

Anderson, McPharlin & Conners, Jesse S. Hernandez and Vanessa H. Widener for Petitioner and Respondent.

_____

# INTRODUCTION

Defendant and Appellant Willie Mae Drumgo is one of the beneficiaries and successor trustees of Beatrice and James Gardner's joint trust. Drumgo became involved in a dispute over the management of trust assets with a co-successor trustee. In the process of removing the co-trustee, Drumgo obtained an order in 2009 from the court cancelling a deed of trust that James Gardner had entered into prior to his death in favor of Respondent and Petitioner Wells Fargo Bank N.A. (the Bank). Drumgo did not involve the Bank in that action and never notified the Bank of the court's order cancelling the deed of trust. In a collateral attack on the cancellation of its lien, the Bank subsequently petitioned for declaratory relief requesting payment of the money owed on the deed of trust and relief from the order cancelling the deed of trust. In a direct attack on the cancellation of its lien, the Bank also moved to vacate the portions of the court's order that cancelled the deed of trust. In response, Drumgo moved for summary judgment as to the Bank's petition and separately opposed the motion to vacate. The court denied Drumgo's motion for summary judgment as to the petition and granted the Bank's motion to vacate.

Drumgo appeals the trial court's order vacating the 2009 order that cancelled the Bank's deed of trust. Drumgo also argues that the court erred in denying her motion for summary judgment. We reverse the trial court's order vacating portions of the 2009 order that cancelled the Bank's deed of trust because the court's decision was not supported by evidence and was thus an abuse of discretion. We do not address Drumgo's appeal from the denial of summary judgment as to the petition as it is not an appealable order. We also conclude that the Bank is not precluded from pursuing its collateral attack on the court's order cancelling its lien.

## FACTS AND PROCEDURAL BACKGROUND

In 1992, James and Beatrice Gardner executed a joint revocable trust and will, naming Drumgo (Beatrice Gardner's daughter) and Hallie Gardner-Lynch (James Gardner's daughter, hereinafter referred to as Lynch) as co-successor trustees. In October 2007, Beatrice Gardner died and Lynch began caring for James Gardner,

2

eventually moving him to Texas to live with her. In March 2008, shortly before his death, James Gardner, in his capacity as trustee, executed a promissory note and deed of trust in favor of the Bank. The trust deed was secured by real property in the name of the Gardner Trust. The note amount was for $156,000. At the time of the proceedings at issue in this case, it appears that $165,000 was owed to the Bank on that loan.

Following James Gardner's death in May 2008, Drumgo filed a petition to remove Lynch as successor co-trustee of the Gardner Trust for the misuse of trust assets and breach of trust. Drumgo claimed that Lynch refused to cooperate with co-trustee Drumgo, that Lynch fraudulently caused James Gardener, who lacked sufficient mental capacity, to sign the deed of trust with the Bank, and that Lynch misappropriated trust assets. In April 2009, the trial court conducted an evidentiary hearing regarding the removal petition, at which Lynch failed to personally appear and testify, although she was represented by counsel. Based on Drumgo's evidence, the court ordered Lynch to be removed as co-successor trustee, and for Drumgo to serve as sole successor trustee. The four paragraphs within that 2009 order purported to cancel the Bank's deed of trust on the property, concluding that James Gardner was not competent to enter into any agreements at the time he executed the deed of trust. The Bank was not given notice of these proceedings or this ruling, and was not involved in the proceedings.

Lynch then sought to remove Drumgo as successor trustee. Drumgo and Lynch subsequently entered into a settlement agreement, where Drumgo agreed to pay $100,000 from her portion of the trust into a blocked account for the sole purpose of paying the Bank's promissory note secured by the deed of trust. Lynch agreed to pay $65,000 from her share of the trust into the blocked account for that same purpose. Drumgo then moved to set aside the settlement agreement, which the court denied.

1.      *The Bank's Collateral Attack on the 2009 Order*

In July 2011, the Bank first made an appearance in this action,[1] petitioning the court pursuant to Probate Code sections[2] 850 and 17200 for declaratory relief mandating the transfer of the $165,000 in the blocked account to the Bank, and vacating the 2009 order purporting to cancel the deed of trust.  In this petition brought against Drumgo, Lynch, and other beneficiaries, the Bank asserted that the 2009 order cancelling the deed of trust was obtained by extrinsic fraud.  Drumgo demurred to the Bank's petition, and the court overruled the demurrer.  Drumgo moved for summary judgment on the Bank's petition.  The court denied that motion.

2.      *The Bank's Direct Attack on the 2009 Order*

In December 2013, the Bank also moved to vacate portions of the court's April 2009 order that cancelled its deed of trust on the property again on the basis of extrinsic fraud; Drumgo opposed the motion.  The court granted the motion to vacate, striking the four paragraphs within the 2009 order that purported to cancel Well Fargo's deed of trust. After the court granted the motion to vacate, the beneficiaries other than Drumgo settled with the Bank and the Court approved the release of $65,000 to the Bank from the blocked account.  That leaves the $100,000 deposited by Drumgo in the blocked account at issue in this case.

---

[1]      There is no evidence in the record as to when the Bank first had notice of this action.  In its moving papers, the Bank asserts that it first received notice of the order cancelling the deed of trust sometime between March and July 2011.

[2]      All subsequent statutory references are to the Probate Code unless otherwise indicated.

DISCUSSION

Drumgo asserts that the court erred in denying her motion for summary judgment as to the Bank's petition, and in granting the Bank's motion to vacate the portion of the 2009 order that cancelled the deed of trust. Because the court's order denying Drumgo's motion for summary judgment is not an appealable order, we do not address it. (See *Sierra Craft, Inc. v. Magnum Enterprises, Inc.* (1998) 64 Cal.App.4th 1252, 1256.) Our discussion is thus limited to the court's ruling that set aside several paragraphs of the April 2009 order that purported to cancel the Bank's deed of trust.

## 1. *Equitable Relief for Extrinsic Fraud Generally*

The basis for the motion to vacate, as well as the Bank's petition requesting relief from the 2009 order, is extrinsic fraud. " 'Extrinsic fraud usually arises when a party is denied a fair adversary hearing because he has been "deliberately kept in ignorance of the action or proceeding, or in some other way fraudulently prevented from presenting his claim or defense." ' [Citation.] It occurs when ' "the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff." ' [Citation.] In those situations, there has not been 'a real contest in the trial or hearing of the case,' and the judgment may be set aside to open the case for a fair hearing. [Citation.]" (*Manson, Iver & York v. Black* (2009) 176 Cal.App.4th 36, 47 (*Manson*).)

"It is well settled in California that a judgment procured by extrinsic fraud or mistake may be attacked either by a motion in the same action or by an independent action in a court having equity jurisdiction,[3] and that *each remedy is distinct and*

---

[3] In all proceedings involving trusts, "the court is a court of general jurisdiction and has all the powers of the superior court." (Prob. Code, § 17001.) The probate court thus exercises broad equitable powers over the trust and trustees. (See *Rudnick v. Rudnick* (2009) 179 Cal.App.4th 1328, 1335; *Kucker v. Kucker* (2011) 192 Cal.App.4th 90, 95–96.)

*cumulative*." (*Rohrbasser v. Lederer* (1986) 179 Cal.App.3d 290, 297 (*Rohrbasser*) (italics added); *Olivera v. Grace* (1942) 19 Cal.2d 570, 575-576.) This means a party can challenge the fraudulent order or judgment in a direct and/or collateral attack. The rationale for providing litigants with two distinct and cumulative remedies is premised on the varying type of evidence that can be presented in direct and collateral attacks. (*Rohrbasser,* at p. 297.) In a motion to vacate (the direct attack), the party is limited to affidavits of voluntary witnesses, unless the court allows the party to question unwilling witnesses. By contrast, in a separate, collateral action, a party can subpoena and depose unwilling witnesses or question them in court. (*Ibid*.) For these reasons a separate action can often be more efficacious and provide the wronged party with more ample relief. (*Ibid*.)

In the case before us, the Bank brought both a collateral and direct attack on the 2009 order by filing, respectively, the petition for declaratory relief and the motion to vacate. We reiterate that the Bank's petition for declaratory relief is not before this court as there is no appealable order arising out of that petition available for review at this juncture. Nonetheless, the court's order vacating portions of its 2009 removal order is properly before this court pursuant to sections 1304 and 17200,[4] and we review the court's decision to grant the motion below. Since these remedies are cumulative, we emphasize that our decision regarding the motion to vacate has no res judicata or collateral estoppel effect on the Bank's pending petition for declaratory relief. There is no evidence before us that the Bank made a detailed presentation of the issues of fraud in its motion to vacate or was given a full opportunity to present oral testimony to support the motion because a transcript of the proceedings was not provided on appeal and because the Rules of Court generally provide for evidence at a law and motion hearing to be received via declaration or request for judicial notice unless there is good cause for

---

[4] Section 1304 provides that orders made pursuant to section 17200 are appealable. Section 17200 sets forth proceedings that constitute the internal affairs of the trust, which include removal of a trustee and the determination of the trust's liability for debts.

testimony. (See Rules of Court, rule 3.1306(a) ["Evidence received at a law and motion hearing must be by declaration or request for judicial notice without testimony or cross-examination, unless the court orders otherwise for good cause shown."]; see also *Rohrbasser, supra,* 179 Cal.App.3d at p. 298 ["[T]he test is whether the person attacking the judgment made a detailed presentation of the issues of fraud or mistake on his motion to vacate, or was given a full opportunity at the time of the hearing to develop the issues by oral testimony. Otherwise, it is still the rule that denial of the motion is not res judicata of the issues and the subsequent independent equitable action can be maintained."].)

**2.     *The Bank's Motion to Vacate Was Not Supported by Substantial Evidence***

We review the court's order granting the Bank's motion to vacate the 2009 order for abuse of discretion. (*Manson, supra,* 176 Cal.App.4th at p. 42.) Where there is no evidence to support the court's findings, an abuse of discretion has occurred. (*Tire Distributors, Inc. v. Cobrae* (2005) 132 Cal.App.4th 538, 544.) To obtain an order vacating the 2009 order, the Bank must satisfy three elements. " 'First, the defaulted party must demonstrate that it has a meritorious case. Secondly, the party seeking to set aside the default must articulate a satisfactory excuse for not presenting a defense to the original action. Lastly, the moving party must demonstrate diligence in seeking to [vacate the order or judgment] once . . . discovered.' " (*Gibble v. Car-Lene Research, Inc.* (1998) 67 Cal.App.4th 295, 315; see *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 982 [extrinsic mistake case].)

Here, the Bank's motion discussed how it was never served with notice of any of the proceedings that resulted in the 2009 order cancelling the deed of trust. Although this is a satisfactory excuse for not presenting a defense in the original action and is the type of circumstance where extrinsic fraud exists, the Bank fails to provide any evidence as to the remaining elements necessary for a motion to vacate. The Bank does not supply evidence regarding when it first learned about the 2009 order so as to support an assertion that it acted with diligence in bringing the motion to vacate. Furthermore, the Bank does not assert or provide any evidence that it has a meritorious case against Drumgo. In sum,

the Bank's motion fails to address the essential factors that a court must analyze in granting the motion to vacate based on extrinsic fraud.

The trial court lacked evidence of the elements necessary to vacate an order based on extrinsic fraud, and thus abused its discretion in vacating portions of the 2009 order.

**3.** ***The 2009 Order Has No Collateral Estoppel Effect on the Bank***

Despite the fact that the trial court erred in vacating portions of the 2009 order, the 2009 order nonetheless has *no* collateral estoppel effect on the Bank. The Bank's interest was not represented by it or any party in privity with it during the 2009 proceedings. (See *Roos v. Red* (2005) 130 Cal.App.4th 870, 879 [As a rule, "[c]ollateral estoppel applies [only] when . . . the party against whom the plea is raised was a party or was in privity with a party to the prior adjudication."].) Because cancelling the deed of trust would obviously injure the Bank's interests, the Bank was indispensible to the action that resulted in cancelling the deed of trust. (*Olszewski v. Scripps Health* (2003) 30 Cal.4th 798, 808 [" '[a] person is an indispensable party [only] when the judgment to be rendered necessarily must affect his rights."]; *Save Our Bay, Inc. v. San Diego Unified Port Dist.* (1996) 42 Cal.App.4th 686, 692 (*Save Our Bay*)[" 'Where the plaintiff seeks some type of affirmative relief which, if granted, would injure or affect the interest of a third person not joined, that third person is an indispensable party.' "]; Code of Civ. Proc., § 389.)

It is well established that indispensable parties cannot be bound by a judgment from an action in which they were not joined as parties. (*Save Our Bay, supra,* 42 Cal.App.4th at p. 693.) Such a judgment "is subject to later collateral attack by the nonjoined indispensable party." (*Ibid*.) Contrary to Drumgo's assertions in the trial court, the 2009 order has no effect on the Bank and the Bank may proceed on its petition for declaratory relief on remand.

8

## DISPOSITION

The court's order vacating portions of its 2009 order is reversed. This reversal has no collateral estoppel or res judicata effect on the Bank's petition for declaratory judgment and other relief against Drumgo, which may proceed on remand. The parties shall bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KITCHING, J.

I concur:

EDMON, P. J.

EGERTON, J. *

---

* Judge of the Los Angeles Superior Court, assigned by Chief Justice pursuant to article VI, section 6 of the California Constitution.

9